# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| TIMM & ASSOCIATES, INC., | Civil No. 05-2370 (JRT/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER ON CROSS SUMMARY JUDGMENT MOTIONS** |
| ANDREW BROAD, | |
| Defendant. | |

William Christopher Penwell and Kristin L. Kingsbury**, SIEGEL BRILL GREUPNER DUFFY & FOSTER, PA**, 100 Washington Avenue South, Suite 1300, Minneapolis, MN 55401, for plaintiff.

Shawn L. Pearson,  **MANSFIELD TANICK & COHEN, PA**, 220 South Sixth Street, Suite 1700, Minneapolis, MN 55402, for defendant.

Plaintiff Timm & Associates, Inc. ("Timm & Associates") filed this lawsuit against its former employee, defendant Andrew Broad. Timm & Associates asserts claims of breach of contract, breach of duty of loyalty, misappropriation of trade secrets, intentional interference with prospective contractual advantage, and diverting a corporate opportunity. Broad asserts counterclaims of breach of contract and violations of the Minnesota Wage Statute. This matter is now before the Court on the parties' cross motions for summary judgment. For the reasons discussed below, Broad's motion is granted as to liability on Counts I, III, and VII of his Counterclaim but denied in all other respects, and Timm & Associates's motion is denied.

# BACKGROUND

Plaintiff Timm & Associates is in the commercial real estate business, and specializes in brokering sales of hotels and motels in the Upper Midwest. Broad claims that sometime before September 15, 1999, Greg Timm, president of Timm & Associates, orally offered Broad a position with Timm & Associates. Broad asserts that he accepted the offer of employment, resigned from his former position at Morgan Stanley, and began taking classes for real estate licensure, which would be necessary for his new job. Broad also claims that on October 11, 1999, after he had begun his work activities at Timm & Associates, Greg Timm indicated for the first time that Broad would have to sign an employment agreement that includes a non-competition provision. Timm & Associates disputes Broad's contention that he received and accepted the offer of employment at Timm & Associates before receiving the employment agreement with the non-competition provision. Rather, Greg Timm avers that it was his standard practice to present the employment agreement with the non-competition provision at the same time he made an offer of employment.

Broad signed the employment agreement on October 11, 1999. The non-competition provision prohibits Broad from working for a competitor, or from working with any of Timm & Associates's customers, for a period of two years after termination of employment, in the states in which Timm & Associates holds a brokers license.

On February 2, 2005, Broad resigned from Timm & Associates. Broad then began working for HREC Investment Advisors in its New York office. HREC also provides hotel brokerage services. In fall of 2005, Timm & Associates learned that Broad was

working on two sales of hotels, one in Minnesota and one in Wisconsin. Timm & Associates subsequently filed this lawsuit in the state district court of Hennepin County, Minnesota, and Broad removed it to this Court on October 11, 2005. On November 30, 2005, the Court issued an Order denying Timm & Associates's motion for a preliminary injunction.

## ANALYSIS

### I. STANDARD OF REVIEW

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### II. BROAD'S MOTION FOR SUMMARY JUDGMENT

Defendant argues that he is entitled to summary judgment on all five counts in the Amended Complaint, and on three of his counterclaims (Counts I, III, and VII).

### A.     Breach of Contract (Count I)

Broad argues that the non-competition provision is unenforceable for several independent reasons and that he is therefore entitled to summary judgment on Timm & Associates's claim of breach of contract.

#### 1.     Consideration for the non-competition agreement

Non-competition agreements are invalid unless bargained for and supported by adequate consideration. *Sanborn Mfg. v. Currie*, 500 N.W.2d 161, 164 (Minn. Ct. App. 1993). Where a non-competition agreement is not ancillary to an employment agreement, it must be supported by independent consideration to be enforceable. *Sanborn Mfg.*, 500 N.W.2d at 164. There is no independent consideration unless the employer provides real benefits beyond those already obtained by the employee in a previous contract. *Nat'l Recruiters, Inc. v. Cashman*, 323 N.W.2d 736, 740-41 (Minn. 1982) (holding that training did not constitute independent consideration for non-competition agreement because it was part of a prior employment agreement).

Broad attests in his affidavits that he did not receive the non-competition agreement until after he accepted employment with Timm & Associates. In contrast, Greg Timm, president of Timm & Associates, attests in his affidavits that, consistent with his "standard practice," he provided Broad with the non-competition agreement before he accepted the offer of employment. As the Court indicated in its Order dated November 30, 2005, the Court concludes that a genuine issue of material fact exists as to when Broad received the non-competition agreement.

Timm & Associates argues that even if the non-competition agreement was received after Broad accepted the offer of employment, it is still binding on Broad because it was supported by independent consideration in the form of Broad's training and draw payments.[1]  Draw payments and training could constitute "independent consideration" sufficient to support a non-competition agreement, but these benefits would have to go "beyond" the scope of the original employment agreement and provide the employee with "real advantages."  *Nat'l Recruiters*, 323 N.W.2d at 741.  The parties offer conflicting evidence as to whether Broad's draw payments and training went "beyond" the scope of the original employment agreement.  For example, Broad points to testimony by Greg Timm indicating that the draw payments were agreed upon before Broad signed the non-competition agreement, while Timm & Associates asserts that Broad negotiated the draw payments at the same time as the non-competition agreement.  Given the dispute of fact on this issue, the Court cannot determine whether Broad was provided with any "real advantages" that could constitute independent consideration for the non-competition agreement.  As such, the Court cannot conclude that the non-competition agreement is unenforceable for lack of consideration.

### 2.     **Effect of breaches of the employment agreement**

Broad argues that Timm & Associates cannot enforce the non-competition agreement because Timm & Associates breached the employment agreement by ceasing to make draw payments and by withholding from Broad commission payments for the

---

[1] Broad negotiated "draw payments," which were advances against future commission payments that were paid to him on a bi-weekly basis so he could have a source of reliable income.

AmericInn in Plymouth, Minnesota.  First, Broad relies upon the holding in *Carlson Real Estate Co. v. Soltan*, 549 N.W.2d 376, 380 (Minn. Ct. App. 1996).  In *Carlson Real Estate Co.*, the Minnesota Court of Appeals held that a party who first breaches a contract is usually precluded from recovering on the basis of the other party's subsequent breach if the first breach was continuing at the time of the second breach and the second breach resulted from the first.  *Id.*  The Court concludes that Broad has not produced enough evidence to show that his decision to engage in work that allegedly violates the non-competition agreement was the result of a breach by Timm & Associates.

Broad also argues the non-competition agreement is not binding on him because Timm & Associates materially breached the agreement when it ceased making draw payments and failed to make commission payments for the AmericInn in Plymouth, Minnesota.  It is general principal of contract law that a party who materially breaches a contract may not enforce that contract against the other party, but whether a breach is "material" is often a question of fact.  *See Cloverdale Foods v. Pioneer Snacks*, 580 N.W.2d 46, 49 (Minn. Ct. App. 1998).

As discussed below, the Court determines that Timm & Associates breached the employment agreement when it ceased making draw payments to Broad and failed to make commission payments owed for the AmericInn in Plymouth, Minnesota.  Timm & Associates argues that even if the cessation of draw payments was a breach, it was not material because Broad no longer needed the draw payments and the payments were not central to the purpose of the employment agreement.  Broad argues that the cessation of draw payments was material because Broad made clear from the outset that he would not

be able to work for Timm & Associates if he did not receive the payments. As for the commission payment owing for the AmericInn in Plymouth, Timm & Associates asserts that it currently owes just over $3000 and argues that this is not enough to constitute a material breach of the employment agreement. Broad argues that his sole compensation was the payment of commissions so this breach is central to the employment agreement. The Court concludes that the materiality of these breaches is best resolved by a jury. The materiality depends on the importance of these breaches relative to the entire employment agreement, and the parties have offered contradicting evidence on the circumstances surrounding the negotiations of the employment agreement.

Finally, Broad argues that the non-competition agreement is unenforceable because Timm & Associates engaged in inequitable conduct. Broad does not specifically identify what conduct of Timm & Associates he believes is inequitable. Moreover, the cases upon which Broad relies provide no support for his argument because Broad voluntarily left his position at Timm & Associates. *See, e.g.*, *Edin v. Jostens, Inc.*, 343 N.W.2d 691, 694 (Minn. Ct. App. 1984) (declining to enforce a non-competition agreement because employer wrongfully terminated the employee). The Court concludes that the non-competition agreement is not unenforceable for this reason.

    **3.**    **Duration and geographic scope of non-competition agreement**

Broad argues that the non-competition agreement is unenforceable because it is overbroad as to geographic scope and duration. Non-competition agreements will be upheld if they are necessary to protect the reasonable interests of an employer and do not impose an unreasonable restraint on the rights of an employee. *Klick v. Crosstown State*

*Bank of Ham Lake*, 372 N.W.2d 85, 87 (Minn. Ct. App. 1985). The reasonableness of the duration of a restrictive covenant may be tested under two alternate standards: (1) the length of time necessary to obliterate the identification between employer and employee in the minds of the employer's customers, or (2) the length of time necessary for an employee's replacement to obtain licenses and learn the fundamentals of the business. *Dean Van Horn Consulting Ass'n v. Wold*, 395 N.W.2d 405, 408-09 (Minn. Ct. App. 1986). The Court finds that the two-year duration of this non-competition agreement is reasonable under either standard.

Broad also argues that the non-competition agreement is too broad in geographic scope. The non-competition agreement extends to "the States of Minnesota, Iowa, North Dakota, South Dakota, Nebraska or any other state in which the Broker may hold a license after the date of this Agreement . . . ." (Docket No. 7 at 6.) Courts may limit the geographic area of a non-competition agreement to the employer's customers, or to a reasonable geographic area. *See Roth v. Gamble-Skogmo, Inc.*, 532 F. Supp. 1029, 1031-32 (D. Minn. 1982). Timm & Associates has stated that it does not intend to enforce the non-competition agreement beyond the states of Minnesota, Wisconsin, Iowa, Nebraska, and South Dakota. The Court agrees that these five states are a reasonable geographic area because these are the states in which Broad was either a licensed broker or licensed sales agent and in which he solicited and obtained listings. There is no merit to Broad's argument that the non-competition agreement should not extend to Wisconsin, even though the parties agreed that two pending transactions in Wisconsin would be excluded from the non-competition agreement. If the jury finds that the non-competition

agreement is enforceable, the Court will limit its scope to Minnesota, Wisconsin, Iowa, Nebraska, and South Dakota.

In sum, Broad has not proven that the non-competition agreement is unenforceable as a matter of law and therefore denies Broad's motion for summary judgment on Timm & Associates's breach of contract claim.

### B.     Misappropriation of Trade Secrets (Count III)

Timm & Associates asserts that Broad's "diversion of the Hampton Inn of Eau Claire transaction to himself and HREC constitutes a misappropriation of Plaintiff's trade secret." (Am. Compl. ¶ 23.) The Minnesota Uniform Trade Secrets Act protects certain types of information through an action for misappropriation, and defines misappropriation as improper acquisition, disclosure, or use of a "trade secret." Minn. Stat. § 325C.01, subd. 3. Courts analyze three factors to determine whether a particular item constitutes a trade secret: (1) the information must not be generally known or readily ascertainable; (2) the information must derive independent economic value from secrecy; and (3) the party asserting misappropriation must have made reasonable efforts to maintain the secrecy of the item. *Lexis-Nexis v. Beer*, 41 F. Supp. 2d 950, 958 (D. Minn. 1999).

Broad argues that he is entitled to summary judgment on the trade secrets claim because the sale of the Hampton Inn was public information and cannot be considered a trade secret. The Court agrees that the fact that the Hampton Inn was for sale was not a trade secret, but Timm & Associates asserts that the identity of the prospective purchaser of the Hampton Inn and the "stage of the transaction" were trade secrets. Whether these

were trade secrets primarily hinges on whether Timm & Associates made reasonable efforts to maintain their secrecy. The record is undeveloped on this point, but giving Timm & Associates, as the non-moving party, the benefit of all reasonable inferences that can be drawn from the facts, the Court cannot conclude that these items were not trade secrets as a matter of law.

Broad further argues that he did not misappropriate this information because Timm & Associates did not represent the ultimate buyer of the Hampton Inn and because Broad played no role in HREC being hired to sell the Hampton Inn. However, Timm & Associates argues that Broad misappropriated trade secrets when he disclosed to HREC the identity of the prospective buyer, who ultimately did purchase the property. Timm & Associates relies on the testimony of Richard George, who is a Principal of HREC, who states that Broad "sourced the buyer." (Richard George Dep. at 20.) Timm & Associates also relies on a draft letter of intent to purchase the Hampton Inn prepared by Broad while he was still employed by Timm & Associates. The letter specifically identifies the company that ultimately purchased the Hampton Inn. Given the evidence presented by Timm & Associates, the Court cannot conclude that its trade secrets claim fails as a matter of law, and therefore denies Broad's motion for summary judgment on this claim.

### C.  Breach Of Duty Of Loyalty (Count II)

Timm & Associates asserts that Broad's "diversion of the Hampton Inn of Eau Claire transaction to himself and HREC" was in violation of his duty of loyalty to Timm & Associates. (Am. Compl. ¶ 19.) Broad argues that as an independent contractor he does not have a duty of loyalty to plaintiff, and therefore argues that he is entitled to

summary judgment on this claim. Broad relies upon *Tousa Homes, Inc. v. Phillips*, 363 F. Supp. 2d 1274, 1280 (D. Nev. 2005). In *Tousa Homes*, the court explained that "[w]hile an employee generally owes his employer a duty of loyalty respecting prospective business opportunity . . ., an independent contractor owes no such duty to an employer unless such a duty is imposed by contract or there exists a relationship of special trust and confidence between the independent contractor and the employer." *Id*. The court held that the independent contractor had no duty of loyalty, and specifically noted that there was no non-competition provision in the contract, nor any other provision that would demonstrate a relationship of special trust and confidence. *Id*. at 1280-81. Here, Timm & Associates argues that the duty of loyalty is imposed by the employment agreement, in the non-competition provision and elsewhere. For example, the employment agreement requires Broad to "use his best efforts to secure information concerning prospective listings." (Docket No. 7 at 10.) Based on the employment agreement, the Court cannot conclude that Broad has no duty of loyalty to Timm & Associates.

### D. Intentional Interference and Diversion of a Corporate Opportunity (Counts IV and V)

Timm & Associates asserts that the activities of Broad in association with the Hampton Inn transaction constituted an intentional and improper interference with its prospective contractual relations and a diversion of a corporate opportunity. Broad argues that these claims must fail as a matter of law because Timm & Associates cannot demonstrate that it had an interest or expectancy in brokering the sale of the Hampton Inn. A court must determine many facts and circumstances relevant to the business

opportunity to determine whether it is a corporate opportunity. *PJ Acquisition Corp. v. Skoglund*, 453 N.W.2d 1, 8 (Minn. 1990). The significant facts include whether the corporation has "an interest or an expectancy growing out of an existing contractual right," and "the relationship of the opportunity to the corporation's business purposes and current activities." *Id.* at 8 n.14.

Broad points to evidence that Timm & Associates never showed the property to the eventual purchaser and never represented the eventual purchaser in any transaction. Timm & Associates points to the sales agreement which required Broad to engage in real estate sales exclusively on behalf of his employer, to use his best efforts to obtain and close transactions on behalf of his employer, and not to compete with his employer. The Court concludes that a question of fact exists as to whether the Hampton Inn transaction was a corporate opportunity for Timm & Associates. *See id.* at 8 (explaining that the determination of whether a business opportunity is a corporate opportunity is ordinarily a question of fact). Accordingly, the Court denies Broad's motion for summary judgment on the claims of intentional interference and diversion of a corporate opportunity.

### E. Broad's Counterclaims of Breach of Contract

#### 1. Cessation of draw payments (Count VII)

Broad first argues that Timm & Associates breached the employment agreement when it ceased making draw payments. The employment agreement provides that Timm & Associates will pay Broad a draw against commissions. The parties do not dispute that on September 11, 2000, Timm & Associates ceased issuing draw payments to Broad. Timm & Associates explains that it believed that Broad no longer needed the draw

payments because his commission payments were large. The employment agreement does not provide that Timm & Associates can terminate the draw payments for this reason. Rather, it states, "Broker reserves the right to change the draw amount if it appears that Sales Agent is not earning commissions at a rate to cover the draw paid to him." (Docket No. 7 at 2.) The Court concludes that Timm & Associates breached the contract by ceasing to make the draw payments.

Timm & Associates argues in its memorandum supporting its motion for summary judgment that Broad has no proof of damages from the cessation of draw payments. Broad has alleged that he suffered "serious economic hardships" because of this breach. (Am. Countercl. ¶ 64.) Whether Broad can prove damages is irrelevant at this stage in the proceedings because Broad is only asking for summary judgment as to liability.

Timm & Associates further argues in its memorandum supporting its motion for summary judgment that Broad waived all his counterclaims for breach of contract by continuing to work for Timm & Associates. The employment agreement requires that any amendments or waivers of the employment agreement be in writing. Although a nonwaiver clause in a contract does not automatically prevent waiver, Minnesota law requires the party who is alleging waiver to provide evidence that the party who is alleged to have waived the right possessed both knowledge of the right in question and the intent to waive that right. *Pollard v. Southdale Gardens of Edina Condo. Ass'n*, 698 N.W.2d 449, 453 (Minn. Ct. App. 2005). The employment agreement was not modified by a writing, and there is no evidence on the record that Broad intended to waive his

rights under the agreement. As such, the Court concludes that Broad did not waive his counterclaims.

Accordingly, the Court grants summary judgment for Broad as to liability on Count VII of his Counterclaim. The Court also denies the cross motion for summary judgment on this count filed by Timm & Associates.

### 2. Failure to pay certain commissions (Counts I and III)

The parties agree that Timm & Associates owes commissions to Broad on the AmericInn Plymouth transaction. The question is whether Broad is owed the entire commission payment now or whether Timm & Associates may pay Broad upon receipt of payments from the client. The employment agreement provides that Broad should be compensated based on a percentage of the "net total commission received by Timm & Associates." (Docket No. 7 at 11.) The Court grants Broad summary judgment as to liability on these counts, but based on the plain language of the employment agreement, Timm & Associates owes commissions to Broad only after it receives payment from its client.

## III. TIMM & ASSOCIATES'S MOTION FOR SUMMARY JUDGMENT

Timm & Associates moves for summary judgment on four of Broad's counterclaims of breach of contract. Three of these counterclaims arise from Timm & Associates alleged failure to pay Broad commissions for the sales of the Country Inn (Count V) and Microtel (Count VI) in Green Bay, Wisconsin, and the Super 8 in Reedsburg, Wisconsin (Count IV). The fourth counterclaim deals with the cessation of

draw payments (Count VII), and the Court denies Timm & Associates's motion for summary judgment on this counterclaim, as discussed above.

Broad first claims that Timm & Associates breached the employment agreement when it paid Broad 30 percent of the commissions for the Green Bay properties. Broad asserts that he was entitled to 60 percent of the commissions, and that Timm & Associates improperly split the commissions between him and another sales agent, Corey Stender. Timm & Associates offers the testimony of Stender, who states that he and Broad agreed to equally split the commissions. Broad testified that there was no such agreement.

If there is no agreement between the salespersons, the employment agreement provides that the decisions about commissions are to be made according the factors provided in "Exhibit B" to the employment agreement. These factors include which salesperson referred the prospects, presented information about the listings, showed the properties, and negotiated the purchase. The employment agreement also provides that commissions could be adjusted based on "the amount of past contact, complexity of the transaction, expenses incurred, assistance provided and other variable factors, <u>with the final review to Greg</u> [Timm]." (Docket No. 7 at 11 (emphasis original).)

The parties do not dispute that Broad listed the Green Bay properties because Stender was not licensed in Wisconsin. Broad offers affidavits from the seller and purchaser that Broad was the primary person in contact with the seller and purchaser of the Green Bay properties, while Timm & Associates emphasizes that Stender "sourced" the seller. Timm & Associates argues it is entitled to summary judgment on these

counterclaims because the employment agreement provides Greg Timm complete discretion to determine how to split commissions when two salesperson are involved.

The Court concludes that a genuine issue of material fact exists on whether Broad and Stender negotiated a split of the commission payment. The Court further concludes that the employment agreement is ambiguous on whether Greg Timm has complete discretion to split commission payments. Interpretation of the employment agreement will depend in part on communications between the parties and past performance under the agreement. If the jury concludes that Broad and Stender did not agree to split the commissions, then the jury will be charged with interpretation of the employment agreement. *See Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (Minn. 2003) (holding that interpretation of an ambiguous contract is a question of fact for the jury). There is no merit to Broad's argument that Wisconsin law precludes Timm & Associates from splitting the commission between Broad and Stender. Stender satisfies the requirements under Wisconsin law because he was licensed in Minnesota. *See* W.S.A. § 452.19.

As for the Super 8 in Reedsburg, Wisconsin, the parties agree that Broad's sole involvement in this sale was that he listed the property because Stender was not licensed in Wisconsin. Timm & Associates argues that because the listing of properties is not one of the factors enumerated in Exhibit B to the employment agreement, Broad is not entitled to a commission. The employment agreement is ambiguous as to whether the factors listed in Exhibit B are the sole factors for consideration, and the Court concludes

that its interpretation is a question for the jury. Accordingly, the Court denies Timm & Associates's motion for summary judgment on Counts IV-VI of the Counterclaim.

This case will be placed on the Court's next available trial calendar.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Broad's motion for summary judgment [Docket No. 66] is **GRANTED IN PART** and **DENIED IN PART**. Broad's motion is granted as to liability on Counts I, III and VII of his Counterclaim, and denied in all other respects.

2. Plaintiff Timm & Associates's motion for summary judgment [Docket No. 73] is **DENIED**.

DATED: December 21, 2006          s/ John R. Tunheim
at Minneapolis, Minnesota.          JOHN R. TUNHEIM
         United States District Judge